```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERT BROWN | |
| Plaintiff, | HON. JEROME B. SIMANDLE |
| v. | Civil Action<br>No. 04-5096 (JBS) |
| WARDEN JOHN NASH, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Robert Brown
U.S. Penitentiary Canaan
P.O. Box 300
Waymart, PA 18472
    Plaintiff Pro Se

Christopher J. Christie
United States Attorney
    By:  J. Andrew Ruymann
        Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ 08608
    Attorneys for Defendants

**SIMANDLE**, District Judge:

This matter comes before this Court upon the motion of Defendant Warden John Nash ("Defendant" or "Warden Nash") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. In this action, Plaintiff Robert Brown ("Plaintiff" or "Mr. Brown") alleges that Defendant exposed him to environmental tobacco smoke ("ETS") at the Federal Correction Institution at Fort Dix ("FCI Fort Dix") in violation of the Eighth Amendment's

prohibition against cruel and unusual punishment.  For the following reasons, Defendant's motion for summary judgment will be granted.

**I.    BACKGROUND**

**A.    Background Facts**

Mr. Brown, acting pro se, filed his Original Complaint with this Court on October 19, 2004. (Amended Complaint at 1.)  In his Original Complaint, Plaintiff, an inmate at FCI Fort Dix at the time, named as defendants six individuals who were all employed at FCI Fort Dix (hereinafter the "Original Defendants").  (Id. at 3-4.)  Plaintiff alleged that the Original Defendants exposed Plaintiff to ETS, also known as secondhand smoke, at FCI Fort Dix in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  (Id. at 2.)

Specifically, Plaintiff alleged that Warden Nash had "direct knowledge that second hand smoke is harmful . . . ."  (Id. at 3.)  Plaintiff alleged that Defendants were not enforcing a prison smoking policy regulation, which restricted smoking to designated areas.  (Id. at 2.)  Other inmates, Plaintiff alleged, were smoking within units, walkways, common areas, and bathrooms and correctional officers were not making their assigned rounds.  (Id.)  Furthermore, Plaintiff alleged that his allergies were exacerbated by exposure to ETS and that the medical staff told him there was nothing they could do.  (Id. at 2.)  In the

2

Original Complaint, Plaintiff requested injunctive relief (in the form of this Court banning smoking and the sale of tobacco products at FCI Fort Dix) and money damages.  (Id. at 3-4.)

On April 4, 2005, Plaintiff filed an Amended Complaint in which Plaintiff alleged that, after he had filed the Original Complaint, he was transferred to the Federal Correction Institution at Allenwood ("FCI Allenwood") where he continued to be exposed to ETS.  Plaintiff named only Warden Nash and Warden Troy Williamson ("Warden Williamson"), the warden of FCI Fort Allenwood, as defendants in the Amended Complaint.[1]  (Id.)

In an Order dated August 16, 2005, this Court dismissed Plaintiff's claim against Warden Williamson due to improper venue.  See Brown v. Nash, Civ. No. 04-5096 (JBS), at 3 (D.N.J. Aug. 16, 2005).  Additionally, the Court specifically stated that "the Amended Complaint filed April 4, 2005 supersedes all prior pleadings; it does not name as defendants several persons named in the original Complaint . . . and the claims against these persons will be dismissed . . . ."  Id.

B.   **Truman Declaration**

Defendant filed the present motion (Def's Mem. Supp. Mot. to Dismiss at 1), supported by a Statement of Facts (id. at 4) and the Declaration of Roberta Truman, an attorney for the Federal

---

[1] Plaintiff did not name any of the other Original Defendants in the Amended Complaint.

3

Bureau of Prisons.  (Declaration of Roberta Truman ¶ 1.)  The following facts derive from this Statement of Facts and Declaration.

Plaintiff was imprisoned at FCI Fort Dix from February 4, 2004 until January 18, 2005, when he was transferred to FCI Allenwood.  (Id. ¶ 2.)  Warden Nash was the warden of FCI Fort Dix from August 2004 until December 2005.  (Id.)  Prior to Warden Nash's tenure, Charles De Rosa was the warden of FCI Fort Dix from June 2002 until June 2004, and Ronnie Holt was the acting warden of FCI Fort Dix from June 2004 until August 2004.  (Id.)

On May 3, 2004, Plaintiff filed an administrative remedy request, claiming he was exposed to ETS.  (Id.)  Warden De Rosa responded to this request on June 4, 2004, informing Plaintiff that FCI Fort Dix had policies in place ensuring that anyone found violating the smoking rules would be subject to discipline, and advising Plaintiff that he should report anyone who violates the smoking rules.  (Id.)  Plaintiff appealed Warden De Rosa's response to the Regional Director on June 10, 2004. (Id.)  The Regional Director responded to this appeal on July 14, 2004, advising Plaintiff of the Bureau of Prison's ("BOP") policies and that he should report anyone who violates the smoking rules. (Id.)  Plaintiff appealed the Regional Director's response to the Central Office of General Counsel on July 26, 2004.  (Id. ¶ 3.)  The Central Office of General Counsel responded to this appeal on

September 3, 2004, advising Plaintiff of the policies and that he should report anyone he sees violating the smoking rules.  (Id.) These are the only administrative remedies Plaintiff has sought. (Id. ¶ 4-5.)

During the time Plaintiff was imprisoned at FCI Fort Dix, smoking was restricted to certain areas pursuant to two BOP smoking policies.  (Id. ¶ 3.)  According to these policies, for the entire period of time that Plaintiff complained about in his administrative appeals, smoking was prohibited at all entrances and indoor areas at FCI Fort Dix, except the Control Room.  (Id.) Additionally, twenty-two inmates from FCI Fort Dix were disciplined for violating the smoking policy from February 4, 2004 to January 18, 2005, the period during which Plaintiff was housed at FCI Fort Dix).  (Id. ¶ 4.)

## II.  **DISCUSSION**

Defendant now moves to dismiss, or, in the alternative, for summary judgment.  Defendant made three arguments in support of this motion: (1) that Warden Nash is entitled to summary judgment because Plaintiff cannot establish the subjective element of deliberate indifference for his Eighth Amendment claim; (2) Plaintiff's claim should be dismissed because of his failure to exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); and (3) Plaintiff failed to state a claim against Warden Nash because the

Amended Complaint does not aver that Plaintiff was exposed to ETS at FCI Fort Dix. (Def.'s Mem. Supp. Mot. to Dismiss at 11, 17, 18.)

On January 29, 2007, this Court wrote a letter to Plaintiff seeking his input regarding Warden Nash's Motion.[2] (Letter from to Plaintiff of 1/29/2007 [Docket Item No. 46].) First, this Court asked whether Plaintiff intended to bring claims against Warden Nash regarding ETS exposure at FCI Fort Dix that were not included in his Amended Complaint. (Id. at 1.) If so, this Court told Plaintiff that it would treat Warden Nash's motion as one for summary judgment and would consider the Declaration of Roberta Truman. (Id. at 1.) Furthermore, the Court informed Plaintiff that it would give him the opportunity to present materials to oppose Warden Nash's motion and instructed Plaintiff that these materials should be limited to affidavits or documents addressing two issues: (1) whether Plaintiff had exhausted administrative remedies to pursue the issue of exposure to ETS relative to the time period when Warden Nash was at FCI Fort Dix, and (2) whether (a) during the time he was imprisoned at FCI Fort Dix, the no smoking policies restricting smoking to certain areas

---

[2] In the Court's January 29, 2007 letter, the Court stated that, because Plaintiff was acting pro se, it was in the interest of justice for this Court to inquire into whether Plaintiff intended to bring claims against Warden Nash regarding ETS exposure at Fort Dix.

were in effect and (b) during the period of time he was imprisoned at FCI Fort Dix, the smoking policies were enforced.

On February 9, 2007, Plaintiff replied to the Court's letter. (Plaintiff's Response of 2/9/2007 [Docket Item No. 47].) First, Plaintiff informed this Court that he intended to bring claims against Warden Nash related to ETS exposure at FCI Fort Dix. (Id. at 1.) Second, Plaintiff argued that he had exhausted administrative remedies. (Id. at 2.) Specifically, he alleged that his administrative appeal was pending until September 3, 2004, and that Warden Nash was the warden of FCI Fort Dix at that time. (Id. at 1.) Third, Plaintiff noted that although the smoking policy was "probably in effect" while he was at FCI Fort Dix, he alleged that it was not enforced. (Id. at 3.) Additionally, Plaintiff attached copies of documents related to his administrative appeals to this letter. (Id. at 8-22.)

For the purpose of this motion and based on Plaintiff's letter of February 9, 2007, this Court will assume that Plaintiff incorporated the allegations from his Original Complaint against Warden Nash, those related to his claim that he was exposed to ETS while at Fort Dix, in his Amended Complaint.[3] As stated in the above letter, this Court will treat this motion as one for summary judgment rather than as a motion to dismiss.

---

[3] As such, this Court need not address Defendant's third argument.

1.      **Summary Judgment Standard**

On a Rule 12(b)(6) motion to dismiss, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b).  Here, Warden Nash submitted a Statement of Facts and the Declaration of Roberta Truman with his motion to dismiss, and this Court has not excluded them.  Thus, this Court will treat this motion as one for summary judgment.

On a motion for summary judgment, the district court must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)(citing Fed. R. Civ. P. 56(c)).  In applying this standard, the district court must view the evidence in favor of the nonmoving party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The moving party bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, where, as here, the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

### 2.  Eighth Amendment

The Eighth Amendment[4] provides a cause of action[5] to a prisoner where prison officials, with deliberate indifference, exposed the prisoner to levels of ETS that pose an unreasonable risk of serious harm to his future health. Helling v. McKinney, 509 U.S. 25, 34 (1993); Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003) (internal citations to Helling omitted).  To prevail on such a claim, the prisoner must prove both objective and subjective elements. Helling, 509 U.S. at 34; Atkinson, 316 F.3d at 262 (internal citations to Helling omitted).

For the objective element, the prisoner must show that he was exposed to unreasonably high levels of ETS. Helling, 509 U.S. at 35; Atkinson, 316 F.3d at 262 (internal citations to Helling omitted).  With respect to this objective element, beyond

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] The parties disagree on whether Plaintiff's cause of action derives from 42 U.S.C. § 1983, or from Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as expanded to the Eighth Amendment by Carlson v. Green, 446 U.S. 14 (1980).  In both his Original and Amended Complaints, Plaintiff did not specify § 1983 or Bivens.  Rather, Plaintiff styled this as an action under Helling, 509 U.S. 25. Interestingly, Helling does not indicate whether it dealt with a § 1983 or a Bivens cause of action.  However, for purposes of deciding this motion, it does not matter whether this is a § 1983 or a Bivens action.

just a scientific and statistical inquiry into the seriousness of the harm and the probability that such harm will actually result from ETS exposure, the Eighth Amendment requires "a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk." <u>Helling</u>, 509 U.S. at 35-36 (emphasis in original); <u>Atkinson</u>, 316 F.3d at 262 (internal citations to <u>Helling</u> omitted).

For the subjective element, the prisoner must show that prison official was deliberately indifferent to a serious risk of harm. <u>See</u> <u>Helling</u>, 509 U.S. at 36; <u>Atkinson</u>, 316 F.3d at 262 (internal citations to <u>Helling</u> omitted). To be deliberately indifferent, a prison official must know of and disregard a serious risk to prisoner health or safety; "'. . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" <u>Atkinson</u>, 316 F.3d at 262 (quoting and citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). Additionally, a prison's adoption of a smoking policy "bears heavily" on the deliberate indifference inquiry. <u>Helling</u>, 509 U.S. 25, 36 (1993).

Here, Defendant is entitled to summary judgment because Plaintiff cannot establish the subjective element of his claim:

10

that Warden Nash acted with deliberate indifference to a serious risk of harm.  Plaintiff was imprisoned at FCI Fort Dix from February 4, 2004 until January 19, 2005.  On May 3, 2004, Plaintiff filed his administrative complaint, in which he claimed that he was exposed to ETS at FCI Fort Dix.  Because this is the only period of time that Plaintiff has complained about in his administrative complaint, for the purposes of this action, Plaintiff can only allege that he was exposed to ETS at FCI Fort Dix from February 4, 2004 to May 3, 2004.  Warden Nash, however, was not the warden of FCI Fort Dix during this time -- Warden De Rosa was.  Warden Nash did not become the warden of FCI Fort Dix until August of 2004.  Thus, it was not possible for Warden Nash to be aware of and disregard a serious risk to Plaintiff's health from February 4, 2004 to May 3, 2004.  This Court is mindful, however, that a pro se plaintiff's pleadings are to be read liberally and assumes that Mr. Brown intended to name the actual warden of FCI Fort Dix during the entire period of his incarceration there.

     More importantly, FCI Fort Dix had and enforced a smoking policy during this time, which bears heavily on the deliberate indifference inquiry.  The Declaration of Roberta Truman establishes that FCI Fort Dix had a smoking policy, and that during the time Plaintiff was housed at FCI Fort Dix, twenty-two inmates were disciplined for violating the smoking policy.

(Truman Decl. ¶ 14.)  Plaintiff has only made general allegations that this smoking policy was not enforced.  He presents no factual evidence of instances when smoking was detected but not addressed under the policy.  Thus, the facts from the Declaration of Roberta Truman are uncontested, and show that FCI Fort Dix had and enforced a smoking policy throughout the period of Plaintiff's confinement at FCI Fort Dix.

Defendant then is entitled to summary judgment because he discharged his burden by showing that there is an absence of evidence to support Plaintiff's case.  Thus, there is no genuine issue of material fact as to the subjective element of deliberate indifference of Plaintiff's Eighth Amendment claim and Defendant is entitled to judgment as a matter of law.  For these reasons, Defendant's motion for summary judgment will be granted.[6]

---

[6] The Court must address one final issue.  As mentioned above, Defendant also argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies.  Under the Prison Litigation Reform Act ("PLRA"), prisoners must exhaust "such administrative remedies as are available" before filing suit for an alleged violation of federal law.  42 U.S.C. § 1997e(a) (1996); see, e.g., Jones v. Bock, __ U.S. ___, ___ (2007), 127 S.Ct. 910, 918-19 (2007)(finding that "[t]here is no question that exhaustion is mandatory under the PLRA"); Pineda-Morales v. De Rosa, No. Civ. 03-4297, 2005 WL 1607276, at *4 (D.N.J. July 6, 2005)(Simandle, J.)  Exhaustion under the PLRA is an affirmative defense, and defendants bear the burden of pleading it.  Jones, __ U.S. at ___, 127 S.Ct. at 921 (reversing the court of appeals for placing burden of pleading exhaustion on the plaintiff).  Here, however, Defendant has not shown that Plaintiff has failed to exhaust administrative remedies.

The particular institution's grievance procedures provide the measure for exhaustion.  Spruill v. Gillis, 372 F.3d 218 (3d

### III. **CONCLUSION**

Because Defendant has shown that Plaintiff cannot establish the subjective element of deliberate indifference for the Eighth Amendment claim, Defendant's motion for summary judgment will be granted. The accompanying Order is entered.

**March 22, 2007**                               **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 U.S. District Judge

---

Cir. 2004). Here, BOP regulations, 28 C.F.R. § 542.10 - § 542.19 (2002), provide a three-step grievance procedure, which a prisoner must exhaust before filing an action. First, a prisoner must file a complaint with the Warden. 28 C.F.R. § 542.14(c). Second, after the Warden responds, a dissatisfied prisoner must appeal to a Regional Director. 28 C.F.R. § 542.15(a). Third, a prisoner who is not satisfied with the Regional Director's response must appeal to the General Counsel, which is the final appeal. Id.

Here, Warden Nash does not dispute that Plaintiff completed these three steps. Rather, he argues that Plaintiff's administrative complaint was filed before he became warden and as such, Plaintiff's administrative appeals are not exhausted as to Warden Nash. This argument, however, was rejected in Pineda-Morales, a case involving similar circumstances. In Pineda-Morales, the defendants argued that the plaintiff, a prisoner at FCI Fort Dix, had failed to exhaust administrative remedies against them because the plaintiff had failed to name certain individual defendants during the grievance process. Pineda-Morales, 2005 WL 1607276, at *5. The Pineda-Morales court rejected this argument, finding that the defendants had failed to prove that the prison grievance process required the plaintiff to name the individual defendants. Id. Warden Nash has similarly failed to show that the BOP regulations, which Defendant cites as the relevant grievance procedures require prisoners to name individual wardens. Thus, Defendant has not shown that Plaintiff has failed to exhaust administrative remedies. Moreover, the Supreme Court in Jones recently clarified that 1997e(a) does not require the prisoner to name all responsible officials in the administrative grievance in order to satisfy the exhaustion requirement. Jones, __ U.S. at ___, 127 S.Ct. at 923.

13